**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
ERIK PRINCE, :
: No. 21 Civ. 10075 (LAP)
                Plaintiff, :
: ECF Case
      -against- :
:
THE INTERCEPT, et al., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY IN SUPPORT OF MOTION TO DISMISS OF**
**DEFENDANTS FIRST LOOK AND MATTHEW COLE**

Jay Ward Brown
Mara Gassmann (*pro hac vice*)
BALLARD SPAHR LLP
1675 Broadway 19th Floor
New York, NY 10019-5820
Tel. 212.850.6119
Fax 212.223.1942
brownjay@ballardspahr.com
gassmannm@ballardspahr.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.  THE FACTS AND LAW SUPPORT APPLICATION OF NEW YORK
    LAW .............................................................................................................................1

II. THE PUBLISHED ARTICLE IS NOT DEFAMATORY ................................................3

III. PRINCE DID NOT AND CANNOT PLAUSIBLY PLEAD ACTUAL
     MALICE .......................................................................................................................6

    A.  Prince Is Required To Plead Actual Malice.............................................6

    B.  Prince Again Failed To Plead Actual Malice ..........................................9

IV. BECAUSE PRINCE KNEW HIS CLAIMS LACKED MERIT AND HE RE-
    FILED ANYWAY, THE COURT SHOULD AWARD FEES .........................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alharbi v. Beck*,
  62 F. Supp. 3d 202 (D. Mass. 2014) ...................................................................................8

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
  2012 U.S. Dist. LEXIS 58155 (E.D. Va. Apr. 25, 2012) .....................................................7

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..............................................................................6, 7

*Bolduc v. Bailey*,
  586 F. Supp. 896 (D. Colo. 1984) .......................................................................................5

*Broadspring, Inc. v. Congoo, LLC*,
  2014 U.S. Dist. LEXIS 116070 (S.D.N.Y. Aug. 20, 2014) ................................................3

*CACI Premier Technology v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ..............................................................................................8

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ............................................................................................5

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ...............................................................................................5

*Clyburn v. News World Communications*,
  903 F.2d 29 (D.C. Cir. 1990) ..............................................................................................8

*Center for Medical Progress v. Planned Parenthood Federation of America*,
  2021 U.S. Dist. LEXIS 140055 (S.D.N.Y. July 27, 2021) ................................................11

*Davis v. Costa-Gavras*,
  580 F. Supp. 1082 (S.D.N.Y. 1984) ................................................................................2, 3

*Deripaska v. Associated Press*,
  282 F. Supp. 3d 133 (D.D.C. 2016) ....................................................................................7

*Gilman v. Spitzer*,
  902 F. Supp. 2d 389 (S.D.N.Y 2012) ..................................................................................5

*Hatfill v. Foster*,
  401 F. Supp. 2d 320 (S.D.N.Y. 2005) .................................................................................1

*Hatfill v. Foster*,
  415 F. Supp. 2d (S.D.N.Y. 2005) ...................................................................................2

*Hatfill v. N.Y. Times Co.*,
  532 F.3d 312 (4th Cir. 2008) ........................................................................................8

*Hourani v. PsyberSolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ..............................................................................7

*Jankovic v. International Crisis Group*,
  822 F.3d 576 (D.C. Cir. 2016) .............................................................................7, 8, 10

*Kinsey v. N.Y. Times Co.*,
  991 F.3d 171 (2d Cir. 2021) .......................................................................................1, 2

*Lerman v. Flynt Distributing Co.*,
  745 F.2d 123 (2d Cir. 1984) ......................................................................................7, 8

*Levin v. McPhee*,
  917 F. Supp. 230 (S.D.N.Y. 1996) ................................................................................1

*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) ....................................................................................8

*Lunn v. Littauer*,
  187 A.D. 808 (N.Y. App. Div. 1919) ...........................................................................5

*Nguyen-Lam v. Cao*,
  90 Cal. Rptr. 3d 205 (Ct. App. 2009) .........................................................................10

*Rebozo v. Washington Post Co.*,
  637 F.2d 375 (5th Cir. 1981) ........................................................................................8

*Samuelson v. Tribune Publishing Co.*,
  296 P. 220 (Wyo. 1931) ................................................................................................6

*Schiavone Construction Co. v. Time, Inc.*,
  847 F.2d 1069 (3d Cir. 1988) ........................................................................................8

*Weinstein v. Friedman*,
  1996 U.S. Dist. LEXIS 3672 (S.D.N.Y. Mar. 26, 1996) ..........................................2, 3

*Zimmerman v. Al Jazeera America, LLC*,
  246 F. Supp. 3d 257 (D.D.C. 2017) ............................................................................10

**I.      THE FACTS AND LAW SUPPORT APPLICATION OF NEW YORK LAW**

The parties agree that the law of the state with the "more significant relationship to the case" governs.  *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021).  From there, Prince litters his opposition with mischaracterizations of both law and fact (his account of the latter is undermined by materials subject to judicial notice).  Just last year, the Court of Appeals reiterated that "where an allegedly defamatory statement is published nationally" and thus "the state with the most significant relationship is not necessarily readily apparent," a presumption that the law of plaintiff's domicile will have the most significant relationship is more readily overcome.  *Id.*; *see also Levin v. McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996) (applying law of New York, where author resided and publishers were headquartered), *aff'd* 119 F.3d (2d Cir. 1997).  If the plaintiff "'has a significant relationship to a state other than the state of his domicile,' New York does not automatically apply the law of the plaintiff's domicile."  *Hatfill v. Foster*, 401 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) (citations omitted), *rev'd on other grounds*, 415 F. Supp. 2d 353 (S.D.N.Y. 2006).

Here are the facts:  Prince *alleges* that he resides in Wyoming.  But public records demonstrate that Prince is domiciled in Virginia, not Wyoming, and confirm beyond dispute that Prince has at least a "'significant relationship to'" Virginia.  For example, in his 2013 memoir, Prince described himself as "[a] native of Michigan" who "now splits his time between homes in Virginia and Abu Dhabi, where he pursues a variety of business ventures."  Decl. of Mara Gassmann ("Gassmann Decl.") Ex. 1.  News articles mention or showcase his Virginia home.  *Id.* Exs. 6, 26.  Fifteen years of FEC filings dating through October 2020 list his northern Virginia address, *id.* Ex. 4, as do 2018 IRS and 2019 Virginia filings, *id*. Exs. 2-5.  And, in opposing the motion to dismiss in the iteration of this suit he filed in Wyoming, Prince submitted a sworn statement that he had registered his certain businesses in Wyoming that he had not, and

1

that he had switched his voter registration to Wyoming in 2017, which he had not, when he toyed with running for Congress there, before retracting them. *Id.* Exs. 8-9. Indeed, even incorporation documents actually filed with the Wyoming Secretary of State – after Prince filed suit – included a Virginia address. *Id.* Exs. 8-10. In sum, there is ample ground on which the Court may conclude that Prince is not a resident of Wyoming at all, or at least that he has a substantial relationship to another state.[1]

On the law, Prince attempts to distinguish *Kinsey* on the basis that *The New York Times* is "distributed in print to New Yorkers and contains a New York-specific section." Opp. at 14. That ignores entirely the Court of Appeals' reasoning in that case, which turned on the fact that *The Times* is a national publication with a national distribution—like *The Intercept* here—and that therefore the court was required to analyze which state had the most significant relationship, leading the Court of Appeals to apply New York law. *Kinsey*, 991 F.3d at 174. And this was so *even though* the challenged article concerned events in Washington, D.C. and was directed at national readers. Where New York is "the home of the defendants"—as it is for both First Look and Cole—"New York has a strong policy in protecting its media defendants.'" *Weinstein v. Friedman*, 1996 U.S. Dist. LEXIS 3672, at *20-21 (S.D.N.Y. Mar. 26, 1996) (Preska, J.) (collecting cases). And New York's interest is even "stronger" when "the Publications relate to matters of public concern," as the Article does here. *Id.*; *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984) ("[L]ibel is a tort with widespread implications for interests of individual free expression and dissemination of ideas, and involves balancing the plaintiff's need

---

[1] Should the Court believe it needs more facts to make a decision, Defendants request discovery into Prince's domicile. *Hatfill v. Foster*, 415 F. Supp. 2d at 353, 356-64 (S.D.N.Y. 2005) (ordering discovery on plaintiff's domicile and, on the basis of taxes, calendars, and other indicia of residency, reversing prior decision applying the law of the his (falsely) alleged domicile).

for compensation against these competing interests. In this respect, libel is less plaintiff-centered than other torts." (citation omitted)).

Prince relies heavily on *Broadspring, Inc. v. Congoo, LLC*, but there the court confirmed any presumption favoring the plaintiff's domicile would not hold if "some other state has a more significant relationship to the issue or the parties." 2014 U.S. Dist. LEXIS 116070, at *18 (S.D.N.Y. Aug. 20, 2014) (Opp. at 13-14). In applying California law, the uncontested domicile of the plaintiff, the court explained, "New York . . . has an interest in protecting the First Amendment rights of its citizens, *but no Defendant is a citizen or resident of New York*." *Id.* at *18-19 (citation omitted) (emphasis added). The opposite is true here. The other cases Prince cites, Opp. at 15-16, are similarly distinguishable: In each, either the defendant was not a media company based in New York, or the plaintiff had some uniquely strong and clear connection to his home state, unlike Prince's purported ties to Wyoming.[2]

## II.     THE PUBLISHED ARTICLE IS NOT DEFAMATORY

Defendants established that the Article does not reasonably convey the defamatory meanings alleged by Prince and that, in any event, any such meaning constitutes non-actionable opinion based on disclosed facts. First Look Mem. ("Mem.") at 8-13. Because Prince fails to rebut their arguments, Defendants largely stand on their opening brief.[3] But Prince's effort to

---

[2] Publishers "consciously attempt to mold their conduct to legal norms," and depend on "legal consequences" that are "predictable." *Davis*, 580 F. Supp. at 1092. New York courts therefore protect the "justified expectation that their conduct will be judged by the rules of jurisdictions in which they carry on their activities." *Id.* While Prince, a globe-trotting national security executive with business interests around the world, may enjoy a Wyoming property, that should not disrupt Defendants' expectation here. *Id.* (public figure plaintiff's domicile rejected).

[3] Prince devotes most of his response to rewriting his Complaint and insisting—inaccurately— that Defendants ignored the purported defamatory statements. Their motion addressed alleged defamatory falsehoods that the *Complaint* put at issue. *See, e.g.*, Compl. ¶¶ 49-50, 51 (complaining of "the story's false claim that Mr. Prince is somehow acting adversely to U.S. interests, behaving 'egregiously,' and engaging in conduct that 'is dangerous thing for any

3

rewrite the Article and established defamation precedent requires rejoinder:

*First*, it is hornbook law that, in assessing defamatory meaning, the Court must consider the challenged statement in the overall context of the publication as a whole. Mem. at 8-9. But even if the Court were inclined to accept Prince's proposition that it must focus on the individual sentences to which he objects, Prince's arguments as to why they are defamatory are based on misstatements of the published text. In one example of his *post hac* rewrite for this litigation, Prince asserts that, "[t]he Article also states that Mr. Prince violated the law because (1) Mr. Prince attempted to provide military services to Wagner, (2) Wagner is a sanctioned entity, and (3) the sanctions against Wagner prohibit individuals from providing it with 'financial, material, or technological support.'" Opp. at 18 (citing Article at 3). As the Court can readily determine from the face of the Article, however, it does *not* "state[] that Mr. Prince violated the law." Rather, the Article indicates that "[i]n attempting to do business with Wagner, Prince may also have exposed himself to legal liability." Article at 2. It quotes the sanctions order that prohibits one from providing support, goods or services to a sanctioned entity. Then, in acknowledgement that Prince did *not* provide such things to Wagner, the Article quotes an expert who opines that "in my experience, the act of soliciting from a sanctioned party would indeed be an apparent violation," but that "whether you make that [legal] case is an entirely separate matter.'" *Id.* Throughout, the Article repeats that Prince and Wagner did not do business. It is fundamentally a misreading of the Article to assert, as Prince does, that it accused him of criminality or even working with Wagner in violation of sanctions laws.

Prince also insists that the statements, on their face, accuse him of "traitorous conduct,"

---

democracy'"). By faulting Defendants for addressing why those passages cannot give rise to a cognizable defamation claim—which he now calls "strawmen" that he "did not challenge"— Prince concedes that those paragraphs are non-actionable. Opp. at 16, 19, 23.

but provides no support for his contention that the Article accuses him of being a traitor (or "treason," as he claimed in Wyoming). Precisely because that word does not appear in the Article, Prince's reliance on *Bolduc v. Bailey*, 586 F. Supp. 896 (D. Colo. 1984), is misplaced: In that case, the defendant *actually said* that the plaintiff was "a traitor who had performed services for the Castro government in Cuba resulting in the death of a number of Cuban 'patriots.'" *Id.* at 899.[4]  That is not this case, and Plaintiff cannot recover based on an imaginary version of the Article. *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 395 (S.D.N.Y 2012) (rejecting plaintiff's "inconsistent" reading of challenged article).[5]

*Second*, contrary to Prince's assertion, news reporting that raises questions—even uncomfortable ones—does not make the reporting defamatory. Prince states that, "[b]y conceding that the Defamatory Statements at least raise questions about whether Mr. Prince engaged in illegal or traitorous conduct, Defendants admit that the Defamatory Statements are capable of defamatory meaning." Opp. at 19. This unsupported assertion misrepresents Defendants' Motion, Mem. at 10, and is the opposite of the law. *Chapin v. Knight-Ridder, Inc.*,

---

[4] Defamation law has undergone a sea change since a Congressman during WWI sued the "manufacturers, tanners and wool dealers" who had decried his "conduct as 'an unpatriotic endeavor unworthy of loyal American business men and particularly reprehensible on the part of a member of our country's war congress.'" *Lunn v. Littauer*, 187 A.D. 808, 809-10 (N.Y. App. Div. 1919) (Opp. at 20). Perhaps such a statement was "'clearly' libel per se" 100 years ago, but Plaintiff's reliance on *Lunn*, while ignoring authorities cited by Defendants decided after *New York Times v. Sullivan* and *Gertz v. Robert Welch Inc.* restricted the ability of powerful public figures like Prince to stifle criticism with the threat of money damages, is telling.

[5] Indeed, as the Court of Appeals observed in *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014), in assessing whether a publication conveys defamatory meaning, it is appropriate to examine both the "full context of the communication in which the statement appears, while also considering the broader social context or setting surrounding the communication." Here, that broader social context reflects vigorous disagreement about the wisdom and enforceability of sanctions, including particularly in connection with Russia, further undercutting the argument that, by simply noting that Prince pitched or spoke with Wagner, the Article necessarily is understood as defamatory *per se*. *See* Gassmann Decl. Exs. 27-30 (collecting articles).

5

993 F.2d 1087, 1098 (4th Cir. 1993) (dismissing claim where alleged defamatory meaning stemmed from questions arising out of investigative report about plaintiff's actions).[6]

Prince's attempt to re-plead the Complaint and rewrite the Article in his Opposition notwithstanding, his claims fail because the Article is not reasonably capable of the defamatory meaning he alleges.

### III. PRINCE DID NOT AND CANNOT PLAUSIBLY PLEAD ACTUAL MALICE

#### A. Prince Is Required To Plead Actual Malice

Prince disputes that New York law applies but does not challenge the obvious fact that, if it does, he is required under state law to establish that the challenged statements were published with actual malice. Mem. at 13-19. If the Court agrees New York law applies, it may turn directly to the question whether Prince adequately pleaded actual malice.

The First Amendment separately requires public figures to plead and prove actual malice, but Prince challenges his status as a limited purpose public figure. As an initial matter, Prince is incorrect that the question whether he is a public figure cannot be resolved at the pleadings stage—it regularly is, both in and outside New York. *See Biro v. Condé Nast*, 963 F. Supp. 2d 255, 269-71 (S.D.N.Y. 2013) (granting pre-discovery motion to declare controversial art authenticator limited purpose public figure and citing prior New York decisions in support), *aff'd*, 807 F.3d 541 (2d Cir. 2015).[7] Prince is likewise mistaken that the Court is limited to the

---

[6] Prince again relies on pre-*Sullivan* law, this time involving a newspaper that had set forth details about a fight between two men that ended in one dead, and criticized the result that let the victor in the fight walk free. *Samuelson v. Tribune Publ'g Co.*, 296 P. 220 (Wyo. 1931) (Opp. at 17, 20). The court held that a reader could glean from the facts presented and opinions disclosed that the plaintiff had murdered his opponent. *Id. Samuelson* is both factually inapposite and long predates the contemporary authorities on which Defendants rely.

[7] *See also, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 138 (D.D.C. 2016) (holding businessman to be public figure on motion to dismiss); *Hourani v. PsyberSolutions LLC*, 164 F.

four corners of his Complaint: The court in *Biro* and other courts have resolved the question by reference to documents subject to judicial notice. *Id.* at 268-72.[8]

Prince then variously challenges the existence of public controversy and casts himself as unwillingly drawn into the controversy for the first time by the Article at issue. A common tactic of defamation plaintiffs that courts easily reject, his arguments ignore reality and applicable law. The relevant question is whether Prince voluntarily participated in an existing public controversy addressed by the Article. The public controversy is not, however, defined by the Article, or by "what makes the Article defamatory," Opp. at 27, as Prince would have it. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 586 (D.C. Cir. 2016) (Plaintiff's argument "that narrowing the definition of the controversy is required in order to relate it to the publication containing the defamation is not well taken. The court has defined controversies as being broader than the narrower discussion contained in the defamatory document."). The controversy is what members of the public—citizens, journalists, lawmakers—were reading, talking, thinking, or writing about. *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-38 (2d Cir. 1984) ("any topic" generating "strongly held views").[9] "[A] court may find that there are multiple potential

---

Supp. 3d 128, 132 & n.1, 136, 145 (D.D.C. 2016) (same); *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 U.S. Dist. LEXIS 58155, at *10-12 (E.D. Va. Apr. 25, 2012) (holding spokesman for non-profit advocacy group to be limited purpose public figure on motion to dismiss).

[8] In the same way he misstates the contents of the Article, Plaintiff isolates and misreads language from *Biro*. The court cited throughout its analysis to news articles and other documents "by and about [plaintiff]" submitted by the defendant, observing that "[c]ourts in this Circuit have employed judicial notice in making determinations about whether plaintiffs are public figures at the motion to dismiss stage." *Id.* at 268-72, 271 n.9 (citations omitted).

[9] Prince answers his own question when he observes, "Defendants do not explain how Mr. Prince selling his security expertise is a public controversy in the first place, stating only that '[t]he nature and impact of Prince's business endeavors on the U.S. received public attention and prompted discussion.'" Opp. at 27. While topics appealing to the "prurient interest" may not give rise to a public controversy, issues of war, politics, and foreign affairs do. *Hatfill v. N.Y.*

7

controversies," or that "'a narrow controversy may be a phase of another, broader one,'" and will "often define the public controversy in expansive terms." *Jankovic*, 822 F.3d at 586 (rejecting plaintiff's narrow take on controversy).

Prince is a voluntary participant in the debates over military contractors, and the use of his security expertise. *E.g.*, Gassmann Decl. Exs. 12-28; Brown Decl. Exs. 21-24. He has utilized his access to the media to raise his profile and shape the public debate. Where a plaintiff embarks on a course of attention that invites comment, he "[can]not escape public figure status simply because he wished not to be one." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1078 (3d Cir. 1988); *accord Lerman*, 745 F.2d at 137 (through writing and other media, plaintiff took "'an affirmative step to attract public attention,'" the "'essential element of a public figure'") (citation omitted).[10] Prince's course of conduct is a far cry from the student in *Alharbi v. Beck*, who had never been in the public eye but was falsely accused of planting a bomb. 62 F. Supp. 3d 202, 208 (D. Mass. 2014) (Opp. at 28). The extensive coverage of Prince's business and political endeavors oversees, spurred directly or indirectly by Prince's own conduct, made his public figure status foreseeable. Gassmann Decl. Exs. 12-30; Brown Decl. Exs. 20-28.[11]

---

*Times Co.*, 532 F.3d 312, 322 (4th Cir. 2008) (public controversy existed re bioterrorism concerns); *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (private security contractors); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1274 (D.C. Cir. 2003) (women in combat).

[10] Politically-connected Prince, a self-described "advisor and confidant" to presidents and himself a one-time potential Senate candidate, assumed the risk of public scrutiny. *Clyburn v. News World Commc'ns*, 903 F.2d 29, 33 (D.C. Cir. 1990) (by "hob-nob[bing]" with politicians, businessman "engaged in conduct that he knew markedly raised the chances that he would become embroiled in a public controversy"); *Rebozo v. Wash. Post Co.*, 637 F.2d 375, 379 (5th Cir. 1981) (same for Nixon's longtime confidant and advisor); *Schiavone*, 847 F.2d at 1078-79 (same for businessman with close ties to Labor Secretary).

[11] For example, in a 2014 *Wall Street Journal* interview, Prince "explained his newest title" as chairman of "an Africa-focused security and logistics company with intimate ties to China's largest state-owned conglomerate." Gassmann Decl. Ex. 13. Prince reportedly said: "'This is not a patriotic endeavor of ours—we're here to build a great business and make some money

The revelation that Prince's inroads to Russia might be growing was newsworthy and important to understanding geopolitical dynamics. He had already been interviewed by the FBI and U.S. House Intelligence Committee about his meetings with a Putin-tied Russian who headed a *sanctioned* wealth fund to discuss Libya, according to 302s, Special Counsel Robert Mueller's Report, and public reporting. *Id*. Exs. 28-31. Prince attracted more public attention when Mueller's Report revealed that he had not testified truthfully about his meetings with that Russian in the Seychelles. *Id.* Simply put, Prince's voluntary conduct pre-dating the Article was bound to attract public attention, and he cannot now deny his public figure status.

### B. Prince Again Failed To Plead Actual Malice

The Wyoming court, in assessing whether the interests of justice required transfer of the action to this Court, warned Prince that it had doubts, based on the allegations of his pleading, that he could prove actual malice. Brown Decl. Ex. 15 at 21-22. The Complaint filed in this Court is no better, nor can the arguments in his Opposition save it. Defendants stand on their opening brief with respect to several of Prince's arguments that he has adequately pleaded actual malice. Mem. at 18 (use of confidential sources), *id.* (purported bias), *id.* (observance of policies and procedures), 19 (outreach to Prince and his denial).[12] But two of his contentions merit additional comment:

*First*, Prince's background as a former Navy SEAL who has advised "multiple U.S. Presidents" does not make it "inherently improbable" that Prince would offer his services to a

---

doing it.'" *Id.* at 2. Opining that "China's expanding commercial empire" does not "come at the expense of American interests," Prince brushed off the "'critics'" who "'can throw stones all they want.'" *Id.* at 3. To Prince, "'this is a very rational decision—made, I guess, emotionless.'" *Id.*; *see also* Brown Decl. Exs. 23-28 (Prince interviews, including on his private foreign work).

[12] Prince argues Defendants' outreach was not sufficiently "meaningful," but they had long sought to interview Prince, and in this instance, he did not need the demanded source-identifying information to give more than his conclusory denial of contact with Wagner. Mem. at 5, 17.

9

Russian entity—among the Presidents he advised was Trump who, at the time in question, was seen as sympathizing and desiring closer relations with Russia and who had other confidants with relationships there.  Unlike in *Nguyen-Lam v. Cao*, 90 Cal. Rptr. 3d 205 (Ct. App. 2009) (Opp. at 29), where there was inherent tension between the published allegations and the underlying facts and previously published reports, there is "nothing inherently contradictory" in the Article.  *Jankovic*, 822 F.3d at 595 (plaintiff's close relationship with politician not evidence that support for politician's adversary was "inherently improbable").

*Second*, the actual malice determination must be made on a case-by-case basis on the pleadings before the Court.  Other cases cited by Prince do not bear on the determination here.  In *Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp. 3d 257 (D.D.C. 2017) (Opp. at 32), the court affirmed that actual malice is an appropriate basis on which to dismiss a defamation complaint when *Iqbal/Twombly* has not been satisfied.  There, the allegation that the filmmakers knew prior to publication that their sole source had recanted satisfied that standard.  *Id.* at 263.  In both the *Harte-Hanks* and *Sharon* decisions cited by Prince (Opp. at 32-33), the defendant was in possession of specific, credible evidence from unbiased sources indicating that the reporting was in error, but that evidence was ignored or not credited.  Prince has not pleaded such facts here because they do not exist, and these cases therefore are inapposite.

## IV. BECAUSE PRINCE KNEW HIS CLAIMS LACKED MERIT AND HE RE-FILED ANYWAY, THE COURT SHOULD AWARD FEES

Because of the prior Wyoming action, Prince was aware when he re-filed his suit in this Court that his claims lacked merit.  And New York law protects defendants such as these from being pursued by deep-pocketed plaintiffs seeking to silence critics and ferret out confidential sources.  Mem. at 19-20 & n.8; *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 2021 U.S. Dist. LEXIS 140055, at *27 (S.D.N.Y. July 27, 2021).

Respectfully submitted,

BALLARD SPAHR LLP

By:    */s/ Mara Gassmann*
       Jay Ward Brown
       Mara Gassmann (*pro hac vice*)
       1675 Broadway 19th Floor
       New York, NY 10019-5820
       brownjay@ballardspahr.com
       gassmannm@ballardspahr.com

       *Counsel for Defendant*