**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                :
ERIK PRINCE,                                                    :
                                                                :     No. 21 Civ. 10075 (LAP)
                              Plaintiff,                         :
                                                                :     ECF Case
             -against-                                          :
                                                                :
                                                                :
THE INTERCEPT, et al.,                                          :
                                                                :
                              Defendants.                       :
                                                                :
                                                                :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Jay Ward Brown
Mara Gassmann
BALLARD SPAHR LLP
1675 Broadway 19th Floor
New York, NY 10019-5820
Tel. 212.850.6119
Fax 212.223.1942
brownjay@ballardspahr.com
gassmannm@ballardspahr.com

*Counsel for Defendants First Look*
*Institute, Inc. and Matthew Cole*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

ARGUMENT .............................................................................................................. 3

I.    PRINCE HAS AGAIN FAILED TO ADEQUATELY PLEAD ACTUAL
      MALICE ........................................................................................................... 3

      A.    General Allegations Of Bias And Prior Critical Reporting Are Not
            Evidence Of Actual Malice .................................................................. 4

      B.    Reliance On Confidential Sources And Claimed Violation Of Policy
            Are Not Evidence Of Actual Malice ..................................................... 6

      C.    There Is Nothing "Inherently Improbable" In The Article That Would
            Establish Actual Malice ........................................................................ 8

      D.    Plaintiff's Own Denials Are Not Evidence Of Actual Malice .............. 10

      E.    Criticisms Of Unrelated Reporting Are Not Evidence Of Actual
            Malice ................................................................................................... 12

II.   THE AMENDED COMPLAINT FAILS AS A MATTER OF LAW FOR
      ADDITIONAL INDEPENDENT REASONS .................................................. 14

      A.    The Article Does Not Reasonably Imply Illegal Or Traitorous Acts Or
            That Defendants Intended Or Endorsed Such A Meaning ................... 14

      B.    Any Implication That Prince's Conduct Was "Traitorous And
            Disloyal" Or Illegal Would Be Non-Actionable Opinion .................... 17

CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................4

*Biro v. Condé Nast,*
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)..................................................................18

*Biro v. Condé Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................................................4

*Biro v. Condé Nast,*
    807 F.3d 541 (2d Cir. 2015) .........................................................................3, 4, 7

*Brian v. Richardson,*
    87 N.Y.2d 46 (1995) ............................................................................................14

*Brimelow v. N.Y. Times Co.,*
    21-cv-0066, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021) ................3, 4, 9

*Cabello-Rondon v. Dow Jones & Co.,*
    720 F. App'x 87 (2d Cir. 2018) ..........................................................................6, 7

*Chapin v. Knight-Ridder, Inc.,*
    993 F.2d 1087 (4th Cir. 1993) ............................................................................16

*Chau v. Lewis,*
    771 F.3d 118 (2d Cir. 2014)................................................................................15

*Church of Scientology Int'l v. Behar,*
    238 F.3d 168 (2d Cir. 2001)..................................................................................3

*Coliniatis v. Dimas,*
    965 F. Supp. 511 (S.D.N.Y. 1997) ......................................................................11

*Contemporary Mission v. N.Y. Times Co.,*
    665 F. Supp. 248 (S.D.N.Y. 1987) ......................................................................10

*Davis v. Boeheim,*
    24 N.Y.3d 262 (2014) ..........................................................................................17

*Dongguk Univ. v. Yale Univ.,*
    734 F.3d 113 (2d Cir. 2013)..................................................................................5

*Edwards v. Nat'l Audubon Soc'y,*
    556 F.2d 113 (2d Cir. 1997)..................................................................................9

*Foretich v. ABC*,
   1997 WL 669644 (D.D.C. Oct. 17, 1997) ..............................................................13

*Greenberg v. Spitzer*,
   155 A.D.3d 27 (2d Dep't 2017) ...........................................................................14

*Gross v. N.Y. Times Co.*,
   82 N.Y.2d 146 (1993) ........................................................................................18

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989) ...........................................................................................12

*James v. Gannett Co.*,
   40 N.Y.2d 415 (1976) ..............................................................................14, 15, 16

*Jankovic v. Intl Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) .........................................................................7, 8, 12

*Lerman v. Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984) ..................................................................................2

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1977) ................................................................................17

*Loeb v. News Times Comm'cns Corp.*,
   497 F. Supp. 85 (S.D.N.Y. 1980) .........................................................................10

*Lohrenz v. Donnelly*,
   350 F.3d 1272 (D.C. Cir. 2003) ..........................................................................10

*McClure v. Am. Family Mut. Ins. Co.*,
   223 F.3d 845 (8th Cir. 2000) ..............................................................................17

*McFarlane v. Sheridan Sq. Press*,
   91 F.3d 1501 (D.C. Cir. 1996) ............................................................................11

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................................17

*MiMedx Grp. v. Sparrow Fund Mgmt.*,
   17 Civ. 7568 (PGG), 2018 U.S. Dist. LEXIS 169669 (S.D.N.Y. Sept. 29,
   2018) ...............................................................................................................9, 10

*N.Y. Times v. Sullivan*,
   376 U.S. 254 (1964) .............................................................................................5

*O'Neill v. Oakgrove Constr., Inc.*,
   71 N.Y.2d 521 (1988) .......................................................................................7, 8

*Old Dominion Branch No. 496 v. Austin*,
    418 U.S. 264 (1974).................................................................................17

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019)................................................................4, 5

*Parsi v. Daioleslam*,
    890 F. Supp. 2d 77 (D.D.C. 2012) ...........................................................6

*Rinaldi v. Holt, Rinehart & Winston*,
    42 N.Y.2d 369 (1977) ........................................................................15, 16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)................................................................................13

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (1st Dep't 2014) .............................................................16

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ..................................................................6

*Westmoreland v. CBS*,
    601 F. Supp. 66 (S.D.N.Y. 1984) .............................................................6

**Statutes**

N.Y. Civ. Rights Law § 76-a .......................................................................1, 2, 3

N.Y. Civ. Rights Law § 79-h ................................................................................7

**Other Authorities**

Fed. R. Civ P. 12 ........................................................................................1, 2, 3

U.S. Const. amend. I .............................................................................13, 16

Defendants First Look Media Works, Inc. n/k/a First Look Institute, Inc. ("First Look") and Matthew Cole respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (Dkt. 39) ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) and The New York Anti-SLAPP statute, N.Y. Civ. Rights Law § 76-a.[1]

## INTRODUCTION

Last month this Court dismissed Erik Prince's defamation action, which arises out of a news article published in April 2020 concerning the business and political activities of the well-connected Prince.  *See* Op. and Order, Oct. 6, 2022 (Dkt. 38) ("Op."); Declaration of Jay Ward Brown ("Brown Decl.") Ex. 1 (Dkt. 17-1) (copy of *Erik Prince Offered Lethal Services To Sanctioned Russian Mercenary Firm Wagner* ("the Article")).  The Court concluded that Prince is a public figure who failed adequately to plead that the Defendants published the article with "actual malice"—that is, with knowledge that any challenged statement was false or likely false.

Now, Prince has amended his complaint—making it his third attempt to successfully plead a claim against Defendants over the Article—and in so doing, he has put to rest any lingering question regarding whether he can plead a plausible cause of action.  Despite the clarity of the Court's Opinion about what constitutes actual malice as a matter of law and what does not, Prince in his Amended Complaint fails to plead any new *facts* amounting to actual malice, trafficking instead in baseless attacks on The Intercept.  Nor does this latest pleading mask the other fatal deficiencies in Prince's allegations:  The challenged statements in the Article are not reasonably capable of the defamatory meaning Prince assigns to them, and they are in any event

---

[1] As Defendants have previously noted in filings in this case and in Prince's dismissed lawsuit in the District of Wyoming over the same claims, "The Intercept" is the title of an online news publication owned by Defendant First Look, not a separate entity subject to suit.

protected as opinion based on disclosed facts.  The time has come for this action to be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Following dismissal of Prince's complaint by the Wyoming federal court for lack of personal jurisdiction, Defendants agreed to toll the statute of limitations to give the parties an opportunity to attempt to resolve the dispute on non-monetary grounds.  On November 24, 2021, Prince re-filed his claims in this Court.  Defendants thereafter moved to dismiss the action on three independent bases:  The Article was not capable of the defamatory meaning that Prince, in re-writing the published words for suit, alleged; it expressed non-actionable opinion based on disclosed facts; and Prince, as a public figure, did not and could not plausibly allege that Defendants had published it with actual malice fault, as required for him to defeat a motion to dismiss.  The Court granted the motion.  In doing so, it held that New York law governed, Op. at 21-28, that Prince was bound to show actual malice as a limited purpose public figure and under the amended New York anti-SLAPP statute, and that Prince's factual allegations failed as a matter of law to meet that standard, *id.* at 28-46 (citing *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984)).  Dismissal was without prejudice.[3]

---

[2] Given the parties' prior briefs and the Court's familiarity with the underlying facts and arguments as evidenced in the Opinion, Defendants limit their factual recitation to that which is relevant or new to this motion.  To avoid burdening the Court with duplicative filings, Defendants as appropriate incorporate by reference their prior motion (Dkt. 15), Memorandum in Support of Defendants' Motion to Dismiss the original Complaint ("Mem.") (Dkt. 16), Reply in Support of Defendants' Motion to Dismiss ("Reply") (Dkt. 34), and exhibits attached to the Brown Declaration (Dkt. 17).  Although Defendants deny that any statements in or implications reasonably conveyed by the Article at issue here are false, and although Plaintiff spins a narrative about The Intercept, its founders and prior reporting riddled with fictions, Defendants again accept as true for purposes of this renewed motion all well-pleaded factual allegations in the Amended Complaint.

[3] Alex Emmons, who left The Intercept in 2020 to attend graduate school full-time and who was also personally named in Prince's suit, in addition to joining the motion under Federal Rule

Prince filed the Amended Complaint.  The allegations are substantially similar to those appearing in the complaints filed first in the Wyoming federal court and then in this one.  The allegations that are new consist largely of heated rhetoric and conclusory attacks and are devoid of *facts* that, taken as true, could establish, by the requisite clear and convincing evidence, that Defendants published the allegedly defamatory Article believing it was false or while entertaining serious doubts as to its truth.  Am. Compl. ¶¶ 5-8, 27-59, 71-80, 82-88, 104-14, 124.

## ARGUMENT

## I.   PRINCE HAS AGAIN FAILED TO ADEQUATELY PLEAD ACTUAL MALICE

Prince's Amended Complaint, like those complaints before it, fails sufficiently to plead constitutional "actual malice" fault.[4]  Actual malice means that "the defendant *in fact* entertained serious doubts as to the truth of his publication."  *Brimelow v. N.Y. Times Co.*, 21-cv-0066, 2021 U.S. App. LEXIS 31672, at *5 (2d Cir. Oct. 21, 2021), *cert. denied*, No. 21-1030, 2022 U.S. LEXIS 1242 (Feb. 28, 2022) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)) (emphasis added).  Prince must plead sufficient facts that, if true, could plausibly show by clear and convincing evidence that Defendants published the Article with actual malice. *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015).

Instead, the Amended Complaint is riddled with boilerplate assertions that the Defendants "acted with actual malice," "knowingly blindfolded themselves to the truth," or "disregard[ed]

---

12(b)(6), moved separately on the grounds that he was not subject to personal jurisdiction. Rejecting Plaintiff's frivolous argument that Emmons was estopped from asserting that defense, the Court dismissed Emmons with prejudice pursuant to Rule 12(b)(2).  Op. at 13, 20.

[4] The Amended Complaint sets forth no new allegations challenging the Court's well-reasoned holding that Prince is a limited purpose public figure required to plead and prove actual malice fault or that the New York anti-SLAPP statute also separately imposes the heightened fault standard, regardless of Prince's public figure status.  Accordingly, Defendants do not repeat those arguments here.  *See also supra* n.2.

the truth," *e.g.*, Am. Compl. ¶¶ 6, 7, 43, while still lacking the *factual* allegations needed to "nudge" the claims "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  Such conclusory allegations are insufficient.  *See* Op. at 8 ("Court is not required . . . 'to credit conclusory allegations or legal conclusions couched as factual allegations'"); *see also id.* at 41; *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279-80 (S.D.N.Y. 2013) (defamation complaint "pleading actual-malice buzzwords" that are not backed by well-pled facts cannot survive a motion to dismiss), *aff'd*, 807 F.3d 541.  Moreover, even if the themes and new matter in the Amended Complaint were not entirely conclusory, they each fail to establish actual malice as a matter of well-settled law.  The Court has already rejected several of Prince's recycled arguments.  Viewed in the context of his own Amended Complaint, none of his additional allegations, considered alone or in combination, would support a jury finding of actual malice as a matter of law.

### A.    General Allegations Of Bias And Prior Critical Reporting Are Not Evidence Of Actual Malice

The Amended Complaint leans into Prince's claim that The Intercept's alleged "political agenda" and "barely . . . conceal[ed] bias," and the supposed "left-wing" leanings of its founders and employees demonstrate actual malice.  Am. Compl. ¶ 8, 9, 24, 124.  But generalized allegations of bias, such as a funder's alleged support for or opposition to a cause or candidate, or critical comments about same, are insufficient to establish actual malice as a matter of black letter law.  *Brimelow*, 2021 U.S. App. LEXIS 31672, at *10 (affirming dismissal of complaint because "alleged ill will toward [plaintiffs] harbored by" the defendant "provide[d] no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements regarding plaintiffs"); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019) (holding that alleged ill will is no basis for a finding of actual malice, but reversing dismissal of complaint because pre-

discovery allegations sufficiently pleaded unique  "personal connection" between editor and

prior events that made him "more likely than the average editor-in-chief to know" publication

contained a factual error); Op. at 44-45.  This would be true *even if* Prince's allegations pertained

to the author of the Article, defendant Matthew Cole.  *Id.*  But Prince's allegations of bias on the

part of persons *not* involved in the reporting or writing of the Article are especially irrelevant.

*N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964) ("state of mind required for actual malice

would have to be brought home to the persons in the [defendant's] organization having

responsibility for the publication" of the challenged statement); *Dongguk Univ. v. Yale Univ.*,

734 F.3d 113, 123 (2d Cir. 2013) ("When there are multiple actors involved in an organizational

defendant's publication of a defamatory statement, the plaintiff must identify the individual

responsible for publication of a statement, and it is that individual the plaintiff must prove acted

with actual malice.").

Prince next alleges that The Intercept has a "history of false reporting" and publishing

"inflammatory language" about him, complaining that it has "published over a dozen inaccurate

stories [since 2014]… attacking his character, political views, and business record."  Am. Compl.

¶ 42-43.  The Amended Complaint identifies certain statements from these prior articles about

which Prince complains, most of which clearly are non-actionable opinion and analysis.  *Id.* ¶¶

44-59 ("Mr. Prince 'portrays himself as a mix between Indiana Jones, Rambo, Captain America,

and Pope Benedict.' This statement about Mr. Prince is not accurate.").  Prince does not point to

any particular statements of defamatory *fact* that he alleges were *knowingly false.*  Additionally,

he does not claim he ever contacted Defendants to seek correction of purported falsehoods in

these articles, or that he sued or threatened suit over them.  Instead, he makes the conclusory

assertion that these articles, because they are critical of him, somehow are proof of actual malice.

He is wrong.  It is black letter defamation law that taking "an adversarial stance" is not "antithetical to the truthful presentation of facts" or "indicative of actual malice."  *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc); *Westmoreland v. CBS*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984) ("The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false.").

In fact, prior consistent statements, a common feature of investigative journalism, which often revisits the same or related subjects, may be evidence of the opposite:  a good faith belief in the accuracy of one's reporting.  *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90-91 (D.D.C. 2012) (critical prior statements by reporter were not evidence of actual malice where they were just as likely evidence of defendant's sincerely held beliefs).[5]

Prince again fails to point to any allegation of fact to support his contention that Defendants' supposed viewpoints, generally or as related to the Article, demonstrate they published with disregard for the truth.

### B.    Reliance On Confidential Sources And Claimed Violation Of Policy Are Not Evidence Of Actual Malice

Prince alleges in his Amended Complaint that only by volunteering the names of their confidential sources to Prince could Defendants learn "whether the sources were biased and whether [they] were in a position to know."  Am. Compl. ¶ 7.  Not only is this plainly not true as a matter of fact and common sense—standard newsgathering practices often involve obtaining information from sources and vetting the credibility and authenticity of information they share, without divulging their identities—but courts routinely reject arguments that reliance on confidential sources is evidence of actual malice, as this Court already did here.  Op. at 42;

---

[5] For this same reason, the statements in various podcasts and online to which Prince points, none of which in any respect contradicts the Article, are not evidence of actual malice even if they could each be ascribed to someone involved in publishing the Article.

*Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 89 (2d Cir. 2018) ("reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice" (citing *Biro*, 807 F.3d at 546)).  As the Court previously observed in rejecting this argument, conclusory allegations about sourcing do not give rise to an inference that Defendants published the Article with knowledge of falsity or with a high degree of awareness of probable falsity of the statements in question.  Op. at 43.

Prince also continues to allege that relying on confidential sources here was a violation of Intercept policy.  Am. Compl. ¶¶ 40-41.  That contention is belied by the text of the policy:  "We strive to supply readers with as many details *as possible* to contextualize and establish the credibility of anonymously sourced information *without compromising the source*."  *Id.* (emphasis added); *see also* Brown. Decl. Ex. 16 (Dkt. 17-16).  It also fails as a matter of black letter law given that "'purported deviations from . . . normal operating procedures . . . do[] not amount to 'purposeful avoidance of the truth.'"  Op. at 43-44 (quoting *Jankovic v. Intl Crisis Grp.*, 822 F.3d 576, 595 (D.C. Cir. 2016)).

Simply put, Prince continues to attempt to use this lawsuit as a tool to learn the identity of the Defendants' confidential news sources, *see* Am. Compl. ¶ 112 (quoting October 2022 letter from Prince requesting the identities of sources and setting forth questions that would obviously reveal or tend to reveal sources), presumably so that he can punish them.  If a refusal by a defendant journalist in a defamation action to disclose the identity of a confidential source were all it took to adequately plead actual malice, the public policy granting journalists a privilege in this regard would be gutted.  *See* N.Y. Civ. Rights Law § 79-h (codifying protections for journalists in the form of both absolute and qualified privileges to withhold newsgathering information as a matter of important public policy); *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d

521, 524 (1988) (holding that both the New York constitution and the First Amendment provide

protections against forced disclosure of newsgathering materials).

### C.     There Is Nothing "Inherently Improbable" In The Article That Would Establish Actual Malice

In his Amended Complaint, Prince newly alleges that the challenged portion of the

Article—reporting that he sought to do business with a group tied to the Russian military—was

"inherently improbable" because he "has been a critic of" and previously "denounced" Russian

involvement in Libya.  Am. Comp. ¶¶ 5, 71-72.  This contention is easily debunked.  Prince

points to his January 2017 meeting with Russian Direct Investment Fund ("RDIF") CEO and

Kremlin ally Kirill Dmitriev, later recounted to President Trump advisors George Nader and

Steve Bannon, in which he claims he said that "the United States could not accept any Russian

involvement in Libya because it would make the situation there much worse."  *Id.* ¶ 71 & n.35.

But Prince's so-called "denunciation" of Russian interference in Libya and later attempt to seek

business advantage are not only *not* inherently improbable, they are consistent with what the

documents referenced in the Amended Complaint show that Defendants knew and reported.[6]

Defendants simply covered Prince's evolving business interests and political standing until four

years later, and in a different political context, he offered his services to Wagner.  *Jankovic*, 822

F.3d at 595 ("nothing inconsistent" about plaintiff's changing relationships and priorities).

Defendants' interpretation of events was only further corroborated by Prince's own sworn

---

[6] The Intercept reported in 2019 that Prince was "incensed" about Russian competition, having "spent years offering his paramilitary services in Libya."  Am. Compl. ¶ 72 & n.36.  In other words, ensuring he did not get edged out was a primary focus.  As Cole elaborated on the May 1, 2019 news podcast Prince references in his pleading, thanks to Prince's ties to the UAE and "Trump's ascension and win," Prince "was back in the catbird seat" during the weekend in the Seychelles where he met with the Russian.  *Id.* ¶ 72 n.37 (Cole analyzing the Mueller report revelations and discussing "the context of what was going on in the Seychelles over those two days").

statements, of which this Court may take judicial notice: "[Dmitriev and I] chatted on topics ranging from oil and commodity prices to how much his country wished for resumption of normal trade relations with the – relationship with the USA. I remember telling him that if Franklin Roosevelt could work with Josef Stalin to defeat Nazi fascism, then certainly Donald Trump could work with Vladimir Putin to defeat Islamic fascism."[7]  In other words, Prince believed that the United States and Russia *should* be working together in common cause against terrorism in Libya and elsewhere, and Defendants' reporting on Prince's outreach to Wagner was entirely *consistent* with Prince's expressions of that belief.  Op. at 44 (no actual malice where "it would not be a contradiction for" both challenge statements and alleged truth "to be true").[8]  Prince's new allegations provide no further basis on which the Court could conclude that anything reported in the Article was "inherently improbable."

---

[7] Test. of Erik Prince, U.S. House of Representatives, Permanent Select Comm. on Intel., Nov. 30, 2017, at 7, https://docs.house.gov/meetings/IG/IG00/20171130/106661/HHRG-115-IG00-Transcript-20171130.pdf.  Prince's Congressional testimony, and his views on the strategic interests posed by Islam, were the subject of an in-depth article by Cole in 2019 that set forth much of the underlying context for the challenged Article published a year later. Eric Cole, *The Complete Mercenary – How Erik Prince Used the Rise of Donald Trump to Make an Improbable Comeback*, The Intercept (May 3, 2019), https://theintercept.com/2019/05/03/erik-prince-trump-uae-project-veritas/ (*see* Am. Compl. ¶ 72).

[8] Prince protests that before April 2020, he had "never [] been accused of offering to sell military services . . . to any [] sanctioned Russian person or entity," Am. Compl. ¶ 81, but given that RDIF was a sanctioned entity at the time Prince met with Dmitriev and the meeting was an area of inquiry by both the special prosecutor and Congress, at the very least, it cannot be said that Defendants' reporting for the Article was "inherently improbable."  Admittedly, his contention also seems a strange hill to die on in the wake of the report by UN investigators to the Security Council alleging that Prince violated the UN arms embargo on Libya, which became public less than a year after publication of the Article.  *Erik Prince, Trump Ally, Violated Libya Arms Embargo, U.N. Report Says*, The New York Times, Feb. 24, 2021, https://www.nytimes.com/2021/02/19/world/middleeast/erik-prince-libya-embargo.html?.

9

**D.      Plaintiff's Own Denials Are Not Evidence Of Actual Malice**

Prince continues to allege that Defendants knew that the statements were false because he—through his lawyer—told Defendants that the reporting was false and that Prince had never met representatives of Wagner.  Am. Compl. ¶ 83.  As the Court previously explained, however, the law is clear that actual malice "cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."  Op. at 46 (quoting *Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 121 (2d Cir. 1997)); *see also Brimelow*, 2021 U.S. App. LEXIS 31672, at *7 (same); *MiMedx Grp. v. Sparrow Fund Mgmt.*, 17 Civ. 7568 (PGG), 2018 U.S. Dist. LEXIS 169669, at *26 (S.D.N.Y. Sept. 29, 2018) ("[A]llegations that a speaker knew of a plaintiff's denial of wrongdoing are insufficient to establish actual malice.").  Here, Prince's allegations are particularly specious when considered alongside the Article, which in fact *included* Prince's firm denial.  Op. at 46; *Contemporary Mission v. N.Y. Times Co.*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987) (no actual malice where defendant "made an attempt to report plaintiffs' side of the story"), *aff'd*, 842 F.2d 612 (2d Cir. 1988); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286 (D.C. Cir. 2003) ("reporting perspectives at odds with the publisher's own, tend[s] to rebut a claim of malice, not to establish one").

Prince acknowledges in his Amended Complaint that Defendants contacted him before publication, but now asserts that Defendants' refusal to provide source-revealing information, when on prior occasions they have engaged in dialogue with Prince about their reporting, is evidence of actual malice here.  Am. Compl. ¶¶ 87-88.  This patently conclusory and unsupported assertion—the opposite inference is equally plausible—is plainly insufficient to show deliberate falsehood given that a decision not to have sought comment at all would not have amounted to actual malice.  *Loeb v. News Times Comm'cns Corp.*, 497 F. Supp. 85, 93

10

(S.D.N.Y. 1980) ("failure to verify statements with the plaintiff . . . [does] not amount to reckless disregard of the truth").[9]  Prince's claim that reaching out but opting not to engage in protracted sharing of information and views does amount to actual malice is unsupported by the law. *Coliniatis v. Dimas*, 965 F. Supp. 511, 518-19 (S.D.N.Y. 1997) (failure to contact plaintiff until day before publication and engage with plaintiff on allegations of criminal conduct not actual malice).

Finally, Prince alleges that actual malice can be inferred from Defendants' refusal to retract.  Am. Compl. ¶ 106.  Just as other post-publication events do not constitute actual malice, it is black letter law that declining to retract a story is not evidence of knowing publication of a falsehood.  *E.g.*, *McFarlane v. Sheridan Sq. Press*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) (no support "for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication").  Here, the allegation is all the more unavailing because Defendants continue to believe in the accuracy of their reporting and have never been shown that a retraction is warranted.[10]

---

[9] Brazenly, Prince discusses communications undertaken in connection with settlement negotiations and then asserts that information exchanged in connection with potential resolution of the dispute included "facts that would have allowed Mr. Prince to affirmatively disprove the allegations in the story."  Compl. ¶ 114.  This is unequivocally false.  Defendants undertook settlement communications in good faith believing Plaintiff might have interest in a "more speech" resolution that would afford him a platform to explain to the public his version of the facts.  In those discussions, during which Prince *never* offered anything more than the same general denial made by his counsel prior to publication, Defendants shared certain *non-source-revealing* information to demonstrate that Defendants were confident of the accuracy of their reporting.  In no way and at no point did that information show or suggest The Intercept's reporting to be false, much less that Defendants knew it to be false.  Plaintiff's counsel has no good-faith basis for these allegations in the Amended Complaint.

[10] As Prince himself alleges, The Intercept is willing to retract or correct when it learns of an error.  Am. Compl. ¶ 32.

**E.**     **Criticisms Of Unrelated Reporting Are Not Evidence Of Actual Malice**

Finally, Plaintiff alleges that The Intercept "has a history of reckless and biased journalism of which its leadership was aware."  Am. Comp. ¶ 32.  He first points to a 2016 incident involving an employee who was terminated over journalistic failures, after which First Look retracted or updated as appropriate the handful of stories affected and posted what a leading media critic described as a "remarkably forthcoming 'note to readers'" by Intercept's editor in chief, detailing what First Look had discovered and apologizing.[11]  *Id.* & n.6.  Even if this were evidence of "reckless and biased journalism," which it is not, Prince cannot explain how his criticism of First Look's handling of the employee's transgressions amounts to evidence of actual malice.  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 665-66 (1989) (actual malice is not established by proof of "highly unreasonable conduct constituting an extreme departure" from ordinarily journalism standards).  In fact, he does not even attempt to link those people or events to the Article, Matthew Cole, or reporting on Prince, nor could he.  Prince further alleges that actual malice can be inferred from a widely covered and debated 2017 incident in which the government was able to glean the identity of an anonymous source for The Intercept when The Intercept sought to confirm the authenticity of the document it had received from the anonymous individual and to give the government an opportunity to respond.[12]  Am.

---

[11] Erik Wemple, *How the media dealt with The Intercept's retracted story on Dylann Roof's 'cousin'*, Wash. Post (Feb. 3, 2016), https://www.washingtonpost.com/blogs/erik-wemple/wp/2016/02/03/how-the-media-dealt-with-the-intercepts-retracted-story-on-dylann-roofs-cousin/ (noting "example of transparency set by The Intercept").

[12] Jake Swearingen, *Did the Intercept Betray Its NSA Source?*, New York Magazine (June 6, 2017), https://nymag.com/intelligencer/2017/06/intercept-nsa-leaker-reality-winner.html (observing competing concerns at play, ongoing debate, and unknowns); Erik Wemple, *Did the Intercept bungle the NSA leak?*, Wash. Post (June 6, 2017), https://www.washingtonpost.com/blogs/erik-wemple/wp/2017/06/06/did-the-intercept-bungle-nsa-leak/ ("[T]hese steps were taken toward the goal of authenticating a leaked document. A fine

Compl. ¶ 33.  In other words, this example, too, of a "history" of errors at The Intercept is entirely unrelated to the Article or Prince.  He again fails to show how this allegation—which involves Defendants taking steps to authenticate and corroborate information—bears on Defendants' belief in the accuracy of the challenged statements in this Article upon their publication.  *See Jankovic*, 822 F.3d at 584 (actual malice must be shown in connection with the alleged defamatory statement).[13]

***

In sum, none of these allegations would, if proven, plausibly establish that Defendants knowingly published false and defamatory statements about Prince in the Article, nor, given the existing public record about Prince and his actions, were such statements "so inherently improbable that only a reckless man would have put them in circulation."  *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).  Indeed, even with the second bite at the apple Prince is taking with this action, he has again failed to carry his burden to allege a plausible claim of actual malice.  That failure constitutes an independently sufficient basis for dismissal of the Complaint with prejudice.

---

imperative. It just so happens that in this case, an act of due diligence appears to have turned into a lead for a leak investigation.").

[13] Prince similarly attempts to smear First Look by pointing to its non-profit model and business operations and criticisms by former employees, none of which bears any factual relationship to the challenged publication.  Am. Comp. ¶¶ 29-31, 36-37.  Prince does not meaningfully try to explain how any of these serve as evidence of actual malice in this case, nor could he.  That First Look is a non-profit that receives donations, including ones it solicits from its own readers, entitles it to no less First Amendment protection that an advertiser-supported publication. *Foretich v. ABC*, 1997 WL 669644, at *8 (D.D.C. Oct. 17, 1997) (media defendant's "focus on popular success of [its] docudrama and on economic gain" were not indicia of actual malice). Likewise, events unrelated to the Article, including philosophical disagreements among current or former staff, simply do not bear on the only legally relevant question, which is whether the persons actually responsible for publication of the Article believed at the time of publication that it was false or likely was false.

13

## II.     THE AMENDED COMPLAINT FAILS AS A MATTER OF LAW FOR ADDITIONAL INDEPENDENT REASONS

If the Court agrees that Prince once again has failed to plead actual malice, it once again need go no further.  But, as Defendants pointed out in moving to dismiss the original Complaint, Prince's claims fail as a matter of law for additional reasons:  The Article does not reasonably convey the defamatory meaning Prince alleges, and moreover, even if such a meaning were reasonably implied by the Article, it would constitute non-actionable opinion based on disclosed facts.

### A.     The Article Does Not Reasonably Imply Illegal Or Traitorous Acts Or That Defendants Intended Or Endorsed Such A Meaning

Prince has made various attempts to rewrite the Article for litigation.  He seeks to recast it as something different from that which Defendants actually published.  But it is the actual text, and not Plaintiff's unreasonable and partial presentation of it in his pleadings, that is properly before the Court on a motion to dismiss.  *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976) ("it is for the court to decide whether the words are susceptible of the meaning ascribed to them"); *Greenberg v. Spitzer*, 155 A.D.3d 27, 44 (2d Dep't 2017) ("[t]he issue of whether particular words are defamatory presents a legal issue to be resolved by the court").  To determine whether a statement is capable of a defamatory meaning, this Court must apply the plain meaning of the statements, reading the challenged publication as a whole and taking into account the context in which the statements were made.  *Brian v. Richardson*, 87 N.Y.2d 46, 50-51 (1995); *James*, 40 N.Y.2d at 419-20.  Where a defamatory meaning is not discernible from a reasonable and natural reading of the publication in context, dismissal is required.  *James*, 40 N.Y.2d at 420.

The Court has the Article before it, and Defendants summarized it in their prior motion to dismiss.  S*ee* Mem. at 3-5 (summary of Article).  Prince alleges that the Article creates implications that he engaged in illegal conduct and disloyal or traitorous behavior.  Am. Compl.

14

¶¶ 2, 9, 67-68.  His asserted implications are not the natural reading of the Article.  *See* Reply at 4-5.  For example, the Article raises concerns about the inherent "conflicts of interest" that exist for Prince as both a U.S. citizen and frequent defense subcontractor, and a business-man selling services to other countries.  Article at 7 ("The conflicts between Prince's commercial interests and the goals of the many governments that retain his services have piled up . . . ."); *id.* ("The conflicts of interest are deep and threaten democracy when you have a free agent going between the U.S. and its main power rivals.").  While being criticized for these apparent conflicts may be uncomfortable, that does not mean the criticism is defamatory.  *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) ("Not all (or even most) maligning remarks can be considered defamatory.");  *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379-81 (1977) (false statement is defamatory only if it exposes plaintiff to disgrace or "induce[s] an evil opinion").

Likewise, Prince fails to read the statements in context and as part of a whole, as he must.  *James*, 40 N.Y.2d at 420.  He asserts that the Article directly accuses him of illegality and sanctions busting, but neglects key passages from the Article that demonstrate Defendants are raising legitimate questions, not making accusations:

> In attempting to do business with Wagner, Prince *may also have exposed himself* to legal liability.

Article at 3 (emphasis added).

> "In my experience, the act of soliciting from a sanctioned party would indeed be an apparent violation," said Brian O'Toole, a senior fellow with the Atlantic Council and former senior sanctions official at the Treasury Department. "Whether you make that [legal] case is an entirely separate matter . . . ."

*Id.* at 4.  The Article also expressly raises the possibility that Prince's proposal was made with permission or tacit approval from government officials.

> The proposal to the Russian firm also raises questions about whether Trump administration officials authorized the meeting or were aware of Prince's efforts to work with the group.

*Id.*  To be sure, a debate may reasonably be had over whether our democratic government can as a matter of law or should as a matter of policy authorize its citizens to engage with persons or entities tied to foreign powers.  But raising that question is a far cry from directly and unequivocally asserting that Prince's conduct is illegal and traitorous, or even disloyal.  Simply put, a plaintiff cannot evade dismissal by pleading such distortions of the plain and natural meaning of a publication.  *James*, 40 N.Y.2d at 420-21 (rejecting argument that challenged statements imputed an accusation of prostitution).

Even if his claimed implications could be credited, however, that does not end the analysis.  Where a libel plaintiff's claim rests on implications, rather than actual defamatory falsehoods allegedly stated within a publication, a heightened standard applies to that claim.  Specifically, the "language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference."  *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)).  Prince fails to make the "especially rigorous showing" that Defendants intended or endorsed the meanings he ascribes to the Article.  *Id.*; *see also* Reply at 5.  Put simply, the actual language of the Article – which includes Prince's denial as conveyed by his attorney, but does *not* include any words that could support the contention that *Defendants* endorsed or adopted the conclusion he is a traitor or a criminal –  is fatal to Prince's attempt to plausibly plead an actionable defamatory meaning.

**B.      Any Implication That Prince's Conduct Was "Traitorous And Disloyal" Or Illegal Would Be Non-Actionable Opinion**

Even if the Court were to conclude that the Article on its face reasonably conveyed both that Prince was engaged in "traitorous and disloyal activities" and "illegality" and that Defendants intended or endorsed these inferences, such unstated implications still could not give rise to a defamation claim because they constitute non-actionable opinion.

Under both federal and New York law, "[o]pinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions." *Rinaldi*, 42 N.Y.2d at 380. Because the First Amendment allows only provably false statements to be potentially actionable as defamation, subjective characterizations and opinions cannot give rise to a valid claim. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (a statement "must be provable as false before there can be liability under state defamation law."). When a statement is not readily "capable of being proven true or false" and lacks "a precise meaning which is readily understood," *Davis v. Boeheim*, 24 N.Y.3d 262, 269-70 (2014), it is classic opinion. Loose characterizations such as "traitorous" and "disloyal" are precisely the kind of indefinite and imprecise words that courts have deemed protected opinion. *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974) ("words like 'traitor' cannot be construed as representations of fact"); *McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 853 (8th Cir. 2000) (statements that plaintiffs "had engaged in 'disloyal and disruptive activity'" and were "'acting against the best interests'" of the public were non-actionable opinion).

In addition to pure opinion, when the factual basis for a conclusion is apparent to readers of an article (or, as is the case here, the basis for raising allegedly defamatory questions is apparent), those statements/questions are protected as opinions based on disclosed fact. *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1977) (statements may be actionable if they imply speaker's

opinion is based on knowledge of facts not disclosed to the reader but "if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"); *Boeheim*, 24 N.Y.3d at 269 (same).

Here, for example, Prince complains that the Article highlights his "ties" to countries such as China and UAE and quotes security experts who opine that Prince's work for certain foreign entities is "a fairly egregious thing to do" and "a dangerous thing for any democracy." Am. Compl. ¶ 69.  The Article, however, sets forth the facts on which these experts base their opinions and, while Prince may dispute their points of view, it is undisputed that he does work with and for foreign governments and international companies on security-related issues.  *Id.* ¶ 13; *see also* Brown Decl. Ex. 18 ("Mr. Prince is a US-born entrepreneur, philanthropist, military veteran and private equity investor with business interests in Africa, Europe, the Middle East and North America . . . .").

As one federal judge summarized the principle:  "If the Constitution protects an author's right to draw an explicit conclusion from fully disclosed facts, then an unstated inference that may arise in a reader's mind after reading such facts is also protected as an implicit expression of the author's opinion."  *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012); *see also Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 155 (1993) ("accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear … the accusation is merely a personal surmise built upon those facts").

Therefore, even if Prince could be said to adequately have alleged actual malice (which he has not), he has failed to adequately plead two other elements of his cause of actions – that the

challenged statements reasonably convey actionable defamatory meaning and that they are actionable statements of fact rather than protected expressions of opinion.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing this action in its entirety and awarding all reasonable fees and costs to Defendants.

Dated: November 21, 2022

Respectfully submitted,

BALLARD SPAHR LLP

By:     */s/ Jay Ward Brown*
         Jay Ward Brown
         Mara Gassmann
         1675 Broadway 19th Floor
         New York, NY 10019-5820
         brownjay@ballardspahr.com
         gassmannm@ballardspahr.com

         *Counsel for Defendants*